148

## CIRCUIT COURT OF LOUDOUN COUNTY

Kay F. Sterrett et al.

v.

Loudoun County
Board of Supervisors et al.

November 8, 1990

Case No. (Chancery) 12938

By JUDGE THOMAS D. HORNE

Complainants in the instant action seek to challenge the rezoning by the Board of Supervisors of Loudoun County of approximately 1,891 acres of land located in the western part of the county. Complainants are described in the Bill of Complaint as residents and taxpayers of the county. Defendant, Round Hill Associates, was the successful applicant in the rezoning of the subject property. The application is described in the pleadings by its application identifier, ZMAP 89-04. Round Hill Associates is represented in this action by the law firm of Hazel & Thomas. Among the lawyers in the firm of Hazel & Thomas assigned to the case is Mari Maginn Hommel. From a review of the affidavits filed in the case, it appears that Ms. Hommel is a member of the Virginia State Bar and served as an Intern, Contract Attorney, and Assistant County Attorney for the County of Loudoun during the period 1980-1989. Her employment ended with the County on September 5, 1989.

She began her employment with the firm of Hazel & Thomas on January 1, 1990.

The challenged rezoning by the Board of Supervisors in this case was approved on August 7, 1990.

Complainants have filed a motion to disqualify Ms. Hommel and the law firm of Hazel & Thomas from participating in the trial of this case. This motion is based upon Ms. Hommel's prior employment with the office of the County Attorney and more particularly her involvement in land use matters involving the County. No showing has been made that Ms. Hommel was involved in any way with the zoning amendment at issue in this case. To the contrary, Ms. Hommel states, in her affidavit, that she at no time rendered advice, had access to confidential information, or participated in the investigation or deliberative processes surrounding the review and adoption of ZMAP 89-04. In addition, Ms. Hommel was not involved in any similar way with the land management plan (Round Hill Area Management Plan) which, in part, forms a basis of complainant's challenge to the rezoning.

Prior to filing the instant motion for disqualification, complainants failed to make inquiry of Ms. Hommel or of the former or current County Attorney concerning her activities within the office as they related to the instant rezoning application by Round Hill Associates. Complainants seek to disqualify Ms. Hommel and her firm based upon what they contend is extensive experience in the handling of land use matters while in the employ of the County Attorney, the quality of her work, personal discussions about her future plans, and the persons to whom she offered legal advice while in public employment. Complainants suggest that a communication from Ms. Hommel to the Director of Planning, Zoning and Community Development evidences a conflict for her in this case. However, this memorandum does not relate to ZMAP 89-04. Instead, it is nothing more than a proffered legal opinion concerning the issue of density policies contained in the Comprehensive Plan as they may affect the county subdivision ordinance. The fact that it may state that it is protected from public inspection under the Freedom of Information Act does not make it any more relevant in this case. It is axiomatic that there exists a critical distinction between the impact of the comprehensive plan in a subdivision context (the

memo) and a zoning context (the instant case). However, such legal distinctions are not necessary to a determination of the issue of disqualification. Even were the memo to be relevant to the Round Hill rezoning, it does not serve to disqualify the lawyer who authored it in this case. Neither the memorandum nor any other evidence offered thus far justify the disqualification of Ms. Hommel. Accordingly, the law firm of Hazel & Thomas is not disqualified from their participation of this case. Thus, one need not explore in this case the need for, or efficacy, of "Chinese Walls" to protect other members of the firm from Ms. Hommel.

The "Objection to Appearance of Counsel and Motion to Disqualify Counsel Appearing on Behalf of Round Hill Associates" is predicated upon the application of Disciplinary Rules 5-105(D), 5-105(E), and 9-101(B). The Virginia Code of Professional Responsibility consists of three separate parts: Canons, Disciplinary Rules, and Ethical Considerations. In the Preamble to the Code of Professional Responsibility, these terms are defined. Thus, Canons are defined as axiomatic norms; Disciplinary Rules as minimum levels of conduct; and Ethical Considerations as objectives.

Canon 5 of the Code of Professional Responsibility requires a lawyer to exercise independent professional judgment on behalf of a client. Disciplinary Rules 5-105(D) and 5-105(E) provide as follows:

> DR 5-105. Refusing to Accept Continued Employment if the Interests of Another Client May Impede the Professional Judgment of the Lawyer . . . .
>
> (D) A lawyer who has represented a client in a matter shall not thereafter represent another person in the same or substantially related matter if the interest of that person is adverse in any material respect to the interest of the former client unless the former client consents after disclosure.
>
> (E) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or her firm may accept or continue such employment.

Complainants, in their capacity as citizens and taxpayers, were never the "clients" of Ms. Hommel. The County Attorney has stated that counsel for the complainants has not been authorized to assert the motion to disqualify on behalf of the County. Furthermore, the Attorney for the County has raised no objection to the participation in the case either by Ms. Hommel or by the firm of Hazel & Thomas based upon the view of the County that, "no foreseeable conflict of interest exists in the matter." Thus, the court considers any challenge under DR 5-105, and to the continued participation of Ms. Hommel or the firm of Hazel & Thomas, to be totally without merit.

Canon 9 provides that a lawyer should avoid even the appearance of professional impropriety. Under Disciplinary Rule 9-101(B), it is provided that:

> a lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

The Court does not believe the term "matter" as used in the Rule should be construed in the sweeping fashion urged by complainants. To do so would be to unreasonably shackle lawyers to continued government service and deter job mobility. Complainants contend that "matter" as defined by the Legal Ethics Committee includes rule making. They then suggest that the Court equal rule making with policy making. Thus, it is argued that Ms. Hommel, by representing persons and agencies as a staff attorney in the County Attorney's office was a policy maker. In large part, they seem to suggest that such policy making was a direct result of Ms. Hommel being a good lawyer. Such evidence falls far short of demonstrating that Ms. Hommel was a policy maker. However, even if one might consider such advice as policy making, it cannot be construed as rule making. Rule making involves the application of a special authority granted agencies of government to promulgate rules having the force of law.

In evaluating the conduct of an attorney in a motion to disqualify, the Court must be guided by the principle that it:

should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyer appearing before it and other social interests, which include the litigant's right to freely chosen counsel . . . *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976).

There is no evidence that Ms. Hommel was involved in rule making or policy making. All the record does reveal is that she, as part of her government service, was involved in a land use practice. It is significant that she was privy to no confidential material concerning the rezoning at issue nor the management plan which, in part, forms the basis of complainant's action. Under the facts of this case, the record is devoid of any evidence that Ms. Hommel accepted private employment in a "matter" in which she had substantial responsibility while a public employee. In defining the concept of "matter" as a limitation on private employment, it has been said that the disciplinary rule:

is limited to government actions focusing upon particular, distinct, and identifiable sets of facts with reasonably measurable implications and consequences involving specific parties. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 34 (D. D.C. 1984).

While the Court in *Laker* would have refrained from including rule making or policy making within the proscription of the Rule, the exclusion of such activities does not affect its application in this case. As the Court has already noted, Ms. Hommel's actions cannot be considered as rule or policy making activities.

It has been said of Rule 9-101(B) that:

The policy considerations underlying the mandatory prohibition of (the Rule) are several: The treachery of switching sides; the safeguarding of confidential government information from future use against the government; the need to discourage government lawyers from handling particular

assignments in such a way as to encourage their own future employment in regard to choosing particular matters after leaving government service, and the professional benefit derived from avoiding the appearance of evil. American Bar Association Committee on Ethics and Professional Responsibility, Formal Opinion 342, p. 3-4 (November 24, 1975) . . . . The Law presumes that an attorney possesses all confidential information to which he had access in his prior representation of a client (citations omitted); and this rule requiring attorney to refrain from involvement in matters in which they had substantial responsibility while public employees recognize the potential that exists for attorneys to disclose the confidences of former clients in violation of the Disciplinary Rule of Canon 4, "A Lawyer Should Preserve the Confidences and Secrets of a Client." Requiring a lawyer not to accept employment under these circumstances and in disqualifying a lawyer from participating in such matters "frees lawyers from the difficult task of erecting Chinese walls in their own minds between what is confidential and what is not, and forwards the public's interest in maintaining the highest standards of professional conduct and the scrupulous administration of justice." (citation omitted). *In re Asbestos Cases*, 514 F. Supp. 914, 920 (E.D. Va. 1981).

The facts in *In re Asbestos Cases, supra*, and *Laker Airways, supra*, poignantly demonstrate the distinction between what conduct is permitted and what conduct is prohibited under the Rule. Thus, a former Special Litigation Counsel for the Department of Justice whose intimate involvement in asbestos litigation in the Norfolk, Virginia, area was prohibited by the Court from participating in continuing asbestos litigation elsewhere. Furthermore, his prior involvement resulted in the disqualification of his firm from continued litigation in the Norfolk area, despite efforts to erect a "Chinese Wall." It is noteworthy that the litigation in which the lawyer and his firm were engaged was a continuation of a series

of actions previously instituted of a same or a similar nature while the lawyer was in government service. Clearly, such continued litigation constituted a "matter" warranting disqualification.

Consistent with the actions of counsel in the *Asbestos Cases* are the actions of counsel in the *Laker Airways* case. At issue in *Laker* were counsel's prior cases in the Antitrust Division of the Department of Justice. The complaint brought by Laker Airways, Ltd., charged a conspiracy among several transatlantic airlines to eliminate its Skytaxi service. In tracing counsel's career with the Department of Justice, the Court noted that the present litigation neither involved on-going litigation in which he was involved while in government service, nor did it parallel a criminal or agency proceeding involving the government. Furthermore, although counsel may have had access to confidential information while in government service, the Court found no reason to disqualify counsel. In addition, the Court found no reason to disqualify counsel as that matter in which he participated was not "substantially related" to the litigation. As the Court observed:

> policy considerations do not support the disqualification of a government attorney merely because during his government service he had access to information about a corporation which subsequently turned out to become an opponent in a private law suit. If the law were otherwise, the limiting language of the Disciplinary Rule could be passed altogether by the single claim that an attorney may have viewed confidential information by the government, and government lawyers would face perpetual disqualification in their subsequent practices. *Laker Airways, Ltd., supra*, at 31, 32.

In summary, the Court finds that the record before it does not justify disqualification of Ms. Hommel or of the firm Hazel & Thomas. It is regrettable that complainants instituted this action without inquiring of Ms. Hommel or her former employer concerning her specific responsibilities while in public service. However, such

failure on the part of the complainants does not warrant sanctions. The Motion for Sanctions is denied.